Order Form (01/2005)

# United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 8240 | **DATE** | 10/3/2011 |
| **CASE TITLE** | CHARONDA SCARELLI vs. UNITED PARCEL SERVICE, INC. | | |

**DOCKET ENTRY TEXT:**

The Court DENIES Defendant's motion to dismiss [18]. Defendant has until October 20, 2011 to answer or otherwise plead. Status hearing set for November 10, 2011 at 9:30 a.m.

■[For further details see text below.]          Docketing to mail notice.

## STATEMENT

    Plaintiff Charonda Scarelli brings this lawsuit against United Parcel Service (UPS), claiming negligence under state tort law. The case is before the Court on the basis of its diversity jurisdiction. *See* 28 U.S.C. 1332. Illinois law governs the dispute. Scarelli claims that she slipped and fell in a UPS shipping facility and suffered damages as a result of the negligence of UPS. She alleges that she was a customer at the facility on May 13, 2010, that it was raining outside on that day, and that the floor inside the facility was wet as a result of water that customers tracked in with their shoes. In addition, she alleges that UPS "constructed, placed and/or maintained a floor of such materials and/or coatings so that the floor would become excessively slippery when rain water and/or snow would be tracked in from outside and accumulate unnaturally on said floor."

    UPS now moves to dismiss this suit for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In ruling on such a motion, the Court treats well-pleaded allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Disability Rights Wisc., Inc. v. Walworth County Bd. of Supervisors*, 522 F.3d 796, 799 (7th Cir. 2008). In order to survive such a motion, a plaintiff must "provide the grounds of his entitlement to relief" by alleging "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (internal quotation marks, brackets, and citation omitted). Specific facts are not necessary. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007).

    UPS argues that Scarelli fails to state a claim under Illinois law because her suit is precluded by the "natural accumulation rule." UPS recognizes that "property owners and business operators have a general duty to provide a reasonably safe means of ingress to and egress from their business." *See Reed v. Galaxy Holdings, Inc.*, 394 Ill. App. 3d 39, 42, 914 N.E.2d 632, 636 (Ill. App. Ct. 2009). However, under the rule

cited by UPS, "property owners and business operators do not have a duty to remove the tracks or residue left inside the building by customers who have walked through natural accumulations outside the building." *Id.* UPS believes that Scarelli's lawsuit falls squarely within this rule and that she cannot save her suit simply by mentioning an "unnatural" accumulation in her complaint.

UPS is correct that simply mentioning an unnatural accumulation is not sufficient to survive a motion to dismiss. Instead, under the federal notice pleading standard, Plaintiff must plead sufficient facts to plausibly suggest that UPS was responsible for such an unnatural accumulation. *Id.* In this case, Scarelli's allegations do not suggest that the accumulation at UPS's facility occurred unnaturally. Instead, she pleads that the accumulation was simply a result of water being tracked in by customers. This allegation alone clearly places Scarelli's case within the reach of the natural accumulation rule.

However, Scarelli's allegations go beyond the question of whether the method by which the water accumulated was natural or not. As noted above, she also pleads that the materials used for the floor and coatings at the UPS facility caused the floor to accumulate water unnaturally and to become excessively slippery when it was wet. Scarelli points out that similar facts have formed the basis for suits under Illinois law before. *Buscaglia v. United States*, 25 F.3d 530, 534-35 (7th Cir. 1994) (allowing plaintiff to proceed on the theory "that the composition of the floor [at a post office], either by itself or in combination with an accumulation of water, caused her injury). Indeed, the Illinois Supreme Court has expressly distinguished such allegations from those that fail under the natural accumulation rule. *Sommese v. Maling Bros., Inc.*, 36 Ill. 2d 263, 265-66, 222 N.E.2d 468, 469-70 (1966) (citing with approval a more detailed analysis of the distinction in the lower court at *Sommese v. Maling Bros, Inc.*, 65 Ill. App. 2d 223, 232-37, 213 N.E.2d 153, 157-60 (Ill. App. Ct. 1965)).

UPS argues that Scarelli's allegations are insufficient to support an inference that the construction of the floor at UPS was unusually or excessively slippery. They point out that it is common sense that floors become slippery when wet, and liken this case to *Fanning v. LeMay*, 38 Ill.2d 209, 211-12, 230 N.E.2d 182, 184-85 (1967), where the Court held that a plaintiff failed to state a cause of action against a shoe manufacturer when she alleged that the soles of her shoes became excessively slippery when she walked on a wet floor. The Court noted that "there is nothing [in the complaint] to suggest in what manner [the shoes] are defective, other than the tendency which almost all shoes have to become slippery when wet." *Id.* at 212, 230 N.E.2d 185.

Ironically, however, *Fanning* indirectly supports Scarelli's position. *Fanning* was an appeal from a decision by the Illinois Appellate Court allowing plaintiff to proceed against the shoe manufacturer and the property owner whose floor was alleged to be constructed of materials that made it excessively slippery when wet. *See Fanning v. LeMay*, 78 Ill. App. 2d 166, 174, 212 N.E.2d 815, 819 (Ill. App. Ct. 1966). The property owner defendant did not appeal the decision, and the appellate court's reasoning in *Fanning* has since been confirmed by the Illinois Appellate Court in the face of the argument that the Supreme Court's opinion in *Fanning* precludes claims of this type as well. *See Richter v. Burton Inv. Props., Inc.*, 240 Ill.App.3d 998, 1002-03, 608 N.E.2d 1254, 1257-58 (Ill. App. Ct. 1993) (finding that the theory in *Sommese* and *Fanning* regarding the materials used to construct the floor was valid, but affirming summary judgment for defendant because plaintiff failed to provide sufficient evidence in support of the theory). In other words, *Sommese*, *Fanning*, and their progeny confirm that allegations of defective design or construction of the floor at a business's entrance are sufficient to state a cause of action under Illinois law, even if somewhat similar allegations are insufficient in a product liability case. Moreover, while UPS may want Scarelli to provide more detail regarding why its floor was unusually dangerous, such specific facts were not necessary in *Fanning* and are certainly not necessary here, as the Court applies the liberal federal notice pleading standard as opposed to the fact pleading standard applicable in Illinois state courts. For these reasons, the Court denies UPS's motion to dismiss.

*[signature: Wm. J. Hibbler]*